UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Radio Activo Broadcasting, LLC,

    Plaintiff

v.

American Towers LLC, et al.,

    Defendants

Case No.: 2:25-cv-01505-JAD-BNW

**Order Granting Temporary Restraining Order and Setting Preliminary Injunction Hearing**

[ECF No. 5]

    Plaintiff Radio Activo Broadcasting, LLC sues American Towers, LLC and Insite Towers, LLC over their alleged threats to decommission a tower used to broadcast Radio Activo's commercial radio station in violation of the parties' license agreement. Radio Activo moves on an emergency basis for a preliminary injunction, claiming that the defendants have cut electrical power to the tower and have threatened to begin dismantling it on Friday, August 22, 2025, and that doing so will result in irreparable harm to Radio Activo's business. It appears from the limiting briefing that Radio Activo is entitled to a temporary restraining order prohibiting the defendants from decommissioning, dismantling, or removing the tower. That restraint will expire at 6 p.m. on Tuesday, September 2, 2025. **Radio Activo's preliminary-injunction motion will be heard in Courtroom 6D of the Lloyd D. George Federal Courthouse, 333 Las Vegas Blvd. So., Las Vegas, Nevada 89101, at 2:00 p.m. on September 2, 2025**.

**Discussion**

    Preliminary injunctions and temporary restraining orders are "extraordinary" remedies that are "never awarded as of right."[1] The Supreme Court clarified in *Winter v. Natural*

---

[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

*Resources Defense Council, Inc.* that, to obtain an injunction, plaintiffs "must establish that [they] are] likely to succeed on the merits, that [they are] likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."[2] The Ninth Circuit recognizes an additional standard: if "plaintiff[s] can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiffs' favor,' and the other two *Winter* factors are satisfied."[3] Under either approach, the starting point is a merits analysis.

On the slim record before the court, Radio Activo has shown at least serious questions going to the merits of its breach-of-contract and implied-breach claims. It presents the licensing agreement that governs the use of the at-issue tower, and it provides documentation showing that it has performed its payment obligations under that contract.[4] Radio Activo has also alleged irreparable harm. According to Radio Activo's owner, the defendants' alleged threats to decommission and dismantle the tower would "force [Radio Activo] to shut down its stations indefinitely."[5] Radio Activo asserts that "[r]elocating a radio broadcasting operation is not a simple matter of changing venues; it involves complex regulatory filings, reengineering signal coverage, and possible loss of licensing rights" that would impose "extraordinary harm and

---

[2] *Id.* at 20.

[3] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[4] *See* ECF No. 5-2 (decl. of Eric Palacios, owner and manager of Radio Activo), ECF No. 5-3 (broadband antenna system license agreement), ECF Nos. 5-4–5-6 (records of Radio Activo licensing payments).

[5] ECF No. 5 at 8.

uncertainty on" Radio Activo's ongoing business.[6] I find Radio Activo has shown for these preliminary purposes that the potential permanence of dismantling the tower would cause it irreparable harm. But I am not convinced at this stage that the defendants' decision to cut power to the tower, preventing Radio Activo from broadcasting temporarily, demonstrates irreparable harm. While Radio Activo claims that its inability to continuously broadcast harms its reputation with customers and its relationship with advertisers, it appears that the bulk of such harm can be addressed through monetary damages. Plus, mandatory injunctions that "order[] a responsible party to take action" are "particularly disfavored," and "district courts should deny such relief unless the facts and law clearly favor the moving party."[7] Radio Activo has not met that heightened standard at this preliminary stage. So I grant a restraining order prohibiting the defendants from decommissioning or dismantling the tower, but I do not direct them to immediately restore power to it. I also conclude that the balance of hardships and the public interest tip sharply in favor of granting that limited relief at least until this matter can be heard. Accordingly,

IT IS HEREBY ORDERED that defendants American Towers, LLC and Insite Towers, LLC are **RESTRAINED** from decommissioning, dismantling, or removing the tower identified in the parties' Broadband Antenna System Licensing Agreement.

IT IS FURTHER ORDERED that **this restraint will expire at 6:00 p.m. on September 2, 2025**.

---

[6] *Id.*

[7] *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (cleaned up).

3

IT IS FURTHER ORDERED that the motion for preliminary injunction **[ECF No. 5] will be heard** in in Courtroom 6D of the Lloyd D. George Federal Courthouse, 333 Las Vegas Blvd. So., Las Vegas, Nevada 89101, at **2:00 p.m. on September 2, 2025**.

_____
U.S. District Judge Jennifer A. Dorsey
August 22, 2025